In the Matter of CALVIN V. HENDERSON, Petitioner, against BERNARD J. GILLROY, as Commissioner of Department of Housing and Buildings of the City of New York, Respondent.

Supreme Court, Special Term, Bronx County, July 31, 1952.

*Jacob Rabinowitz* for petitioner.

*Denis M. Hurley, Corporation Counsel* (*Angelo P. Risi* of counsel), for respondent.

MATTHEW M. LEVY, J. This is an application under article 78 of the Civil Practice Act to compel the commissioner of the department of housing and buildings of the City of New York to rescind an order dated June 2, 1952, whereby certain premises known as 1369 Washington Avenue, in The Bronx, were declared to be unfit for human habitation and dangerous to life and health, because of its insanitary and hazardous condition. The building is a four-story " old-law brick tenement " (built prior to 1901) certified for occupancy by two families on each floor, making eight apartments. Conversion of the building into a sixteen-family multiple dwelling is in progress under the provisions of a filed and approved alteration plan. All the apartments except one are vacant. That one apartment (six rooms on the third floor) is presently occupied by a family consisting of husband,

wife and nine children, ranging in age from one to twenty. The records in the department disclose numerous violations of the Multiple Dwelling Law existing over a period of years. Legal proceedings were commenced by the department against the owner, who was found guilty of violating the Multiple Dwelling Law and was fined in the Magistrate's Court.

After examinations and inspections the building in question was found by the department to be in an unsafe and insanitary condition and unfit for human habitation, and hazardous and dangerous, because of the alteration and the new construction work in progress requisite for removal of the existing violations and to alter the premises, and because of lack of protection in case of fire, and because of absence of adequate water supply. It was certified by the department that the necessary repairs could not be made while any of the apartments was occupied. Accordingly, the owners, lessees and occupants — all of them — were directed by the commissioner to vacate.

The lone tenant presently on the premises is the petitioner before me, and he asks the court to mandamus the commissioner to rescind the order directing that the premises be vacated. In the petition, it is alleged " upon information and belief " that the premises are " fully protected from fire," " safe from any hazards," that " an adequate water supply exists," that " the premises occupied by petitioner are habitable " and that " there are no repairs necessary in order that the aforesaid be rendered safe, healthy and habitable." It is alleged further, and again on " information and belief," that " the issuance of the order to vacate was not a direct result of the condition of the building, and that it was brought about solely as a part of a scheme by the owners of the building to force your petitioner from the premises," and that these owners " conceived a plan of subdividing and furnishing petitioner's apartment of which the maximum rental was $29 so that a rental of at least $125 could be obtained from the same apartment area." It is further claimed that " there is no necessity for such removal and that the Respondent [the Department] in issuing said order has done so to aid the owner in his attempt wrongfully to force petitioner from the premises."

If these allegations are true the duty of the court would be clear — the order should be rescinded and the occupants permitted to remain in the premises unmolested. General allegations, legal conclusions, charges of wrongdoing set forth in the petition — if unsupported by facts — are, however, insufficient upon which to base favorable judicial action (*Matter of Hines* v.

*State Bd. of Parole*, 293 N. Y. 254, 258; *Bonnell* v. *Griswold*, 68 N. Y. 294, 298; *City of Buffalo* v. *Holloway*, 7 N. Y. 493, 498; *O'Brien* v. *City of Rome*, 262 App. Div. 940; *Gerdes* v. *Reynolds*, 281 N. Y. 180). On the argument, the only proof presented by the petitioner was photographs of certain portions of the premises — from which, without more, I was requested to determine that the building is in satisfactory condition. When I asked whether there was any expert opinion to be presented that the premises were sanitary, safe, habitable and nonhazardous, the answer was in the negative. When I asked whether the commissioner had acted hastily and abruptly, the answer was also in the negative; and the petitioner urged that from the fact that the commissioner had issued his order so recently, after the months and years of violations and proceedings, I should conclude that there was no need at all for its issuance. When I asked whether there was any semblance of proof of nefarious or collusive conduct on the part of employees of the department, the answer was in the negative. I must and do assume, until satisfactory evidence is presented to the contrary, that the department is doing its bounden duty and that its officials, guardians of public health and limb and life, are honestly and conscientiously performing their serious and important tasks.

I do not go along with the petitioner in his contentions. An eviction order such as this is no haphazard determination. It is not freely or easily issued, particularly in these emergency days of severe shortages in adequate housing facilities. But it is the sworn responsibility of the commissioner to do his duty as he sees it — squarely and fearlessly. If he did not issue the order, and something untoward happened to any member of petitioner's family, he would be criticized for his laxity. Since he did issue the order, and the tenant is being ousted, he is being criticized for his severity. This " damned if you do, and damned if you don't! " approach may make cowards of administrative officials and work havoc in the needed protection of the community. That cannot be, and I shall not encourage it.

The owner of these premises is not before me in this matter, but I may assume from what was presented to the Temporary State Housing Rent Commission, to the Magistrate's Court, and to the department of housing and buildings — as the record unfolds itself to me — that the owner is a person who, in the language of the petitioner, is an " avaricious " " schemer ". It may be that the required repairs are intentionally not being made and that the building is intentionally being permitted to be run down into a state of general disrepair by the owner —

with knowledge that necessary corrections cannot be accomplished while any of the apartments is occupied — and thus, with malice aforethought, he is thereby succeeding in ousting the petitioner from the premises under cover of an order of a municipal department. But this is of no moment in the present proceeding. If the building is unsafe, it must be vacated — even if by such ouster the owner's personal ends are thereby served. That result is but incidental to the protection afforded the public by compulsory compliance with the statute and the regulations. The action of the department of housing and buildings cannot be governed by its effect upon the relationship between the parties, and no determination of mine in this matter is intended to interfere with their respective rights as against each other. There are proceedings presently pending between the landlord and the tenant before the Temporary State Housing Rent Commission respecting the occupancy accommodations in these premises, and either there or in some other forum the issues between them may properly be heard and resolved.

What is quite apparent from this record is that a fire would seriously menace the lives of the occupants of this building, as well as the lives of those living in the vicinity. Recent experience in this town has given dire warning of the tragic holocaust that may result if premises such as those here involved are continued to be occupied notwithstanding the hazard. The court has no choice but to refuse to cancel the vacate order. The issuance and the enforcement of an order to vacate should not be disturbed by the court unless such issuance is arbitrary, unreasonable or capricious. It is not and should not be the province of the court to substitute its judgment for that of the administrator. Where an unlawful occupancy creates a hazard, the department of housing and buildings may cause the building or parts thereof to be vacated. (*People* v. *Broadway-Sheridan Arms,* 275 App. Div. 352, affd. 300 N. Y. 559). If there is warrant in the record and reasonable basis in law, the administrative determination must be accepted by the court (*Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104).

The petition should be dismissed, as I noted at the time of the argument. I refrained for a short while from issuing my formal decision so as to give the petitioner an opportunity to obtain other housing accommodations. The corporation counsel, responding to an inquiry by me in that behalf, stated that it is the policy of the department of housing and buildings, where an order to vacate a building is issued by it, to request the department of welfare and the city housing authority to provide accom-

modations for such tenants as need this assistance in relocation. This was done by the commissioner in the present case and the petitioner was informed accordingly. It behooves the tenant to move promptly to protect himself, his family and neighbors, and, if so advised, to use other legal means to carry on his battle with the owner.